Good morning, your honors. May it please the court, my name is Marilyn Rea. I represent Transgroup in this matter. I'd like to reserve a few moments for rebuttal if I might. It's very important to begin by stating what this case is not about. It's not about an action under the Carmack Amendment for the loss of cargo. That cause of action was dismissed. And it's not about a state law claim for breach of a contract of carriage. That cause of action was dismissed as well. The remaining third cause of action should have been dismissed. There was no basis in law and there was no basis in fact for a judgment against Transgroup. Can I just step back for a second? This case is about $8,000 worth of lost scooter parts, correct? Yes, your honor. And the reason it's managed to find its way into the Ninth Circuit and continue to have some vitality is because of the possibility of attorney's fees or what? The reason is the district court held that the claimant had a private right or cause of action against the carrier for issuing a bill of lading that did not apply. I understand what the district court did, but maybe I'm having trouble understanding why this case didn't go away just based on the lost scooter parts and settling that out. It didn't go away because that cause of action was dismissed. And although this case involves only $7,900 worth of merchandise, in fact, this bill of lading was one of thousands of shipments carried by Transgroup. So while we have only one small shipment here, there are tens of thousands of shipments that are subject to the same bill of lading terms. And that's why it was very important for the court to handle this matter. The district court held that this bill of lading that was issued by Transgroup didn't comply with the Motor Carrier Act. But the district court also found that this bill of lading was not applicable to this shipment. And so we have an inconsistency in the court's ruling. So what you're really concerned about is the interpretation under the Motor Carriers Act that Transgroup's bill of lading is not a valid bill of lading. This case doesn't have anything to do about $8,000 worth of lost scooter parts. Exactly. You're exactly right, Your Honor. The point is the court found that although the Transgroup bill of lading didn't apply to the transaction, in fact, the court entered judgment against Transgroup because they attempted to assert that that bill of lading applied. It complied with all of the terms of the Motor Carrier Act. It said everything that was required to be said. I guess your argument is the district court should not have reached the conclusion it reached if it relied upon the KPX bill of lading as the controlling bill of lading. In essence, there was no reason to enter any kind of a declaratory judgment with regard to the efficacy of the Transgroup bill of lading. Exactly, Your Honor. And in that sense, the court issued an advisory opinion. The real issue as to whether there was a violation of the Motor Carrier Act arose under the question of whether the Transgroup had issued a bill of lading. And even if the court were to find that the Transgroup bill of lading was not the operative bill of lading, in fact, KPX affirmatively argued the Transgroup issued the Rodeo bill of lading. And so if the basis of the court's ruling was that there was no bill of lading issued, KPX conceded that indeed there was. But whether a bill of lading was issued is not really determinative of the whole issue. What must be looked at now is whether KPX suffered any damages. Right, as a result of an exclaimed problem with the bill of lading. Exactly. Because the court found that although the bill of lading was not the operative bill of lading, somehow KPX was damaged by that. And that's again where the court had some inconsistency in its rulings. You know, I'm inclined to think you're right about the mistake the district court made with respect to the bill of lading. What I don't get is why the district judge didn't then send the state claim back to state court. I don't really understand that either, Your Honor. There was an objection filed to the I mean, that's kind of where I started. I mean, it seems to me that this is a lost-my-parts claim, you know, figure out who's right or wrong about whether the parts were lost, how much did they cost, get it back, and get rid of this Federal question about interpretation. And the loss is too low to be in Federal court, so it could be litigated in state court. Yeah, other than if you invoke this section, this Federal law section. Well, that's exactly right. And the point is what remained in the case was in essence an advisory opinion. And if the court went on to find that the plaintiff, KPX, didn't have a right to bring a direct action on this bill of lading that didn't apply, the district court had no jurisdiction at all to decide the case because the real issue, as Judge McKean points out, was the loss of the scooters. And that cause of action was dismissed. But the district court took it a step further. And that's not appealed by or cross-appealed by them? No, Your Honor, it was not. Is this case going to by any chance to the Ninth Circuit mediation program? Yes. And obviously, here we are. Yes. But that's because it's not about the scooter parts. Well, that's exactly right. The issue is whether there's a private right to sue for a bill of lading that was found not to apply. Well, nothing prevents anybody from resolving that issue. That's correct. There is nothing in the act that says your bill of lading has to be called one thing or another. And there was no... Can I make a suggestion? Sure. Would you like to reserve the last four minutes of your time so we can... Yes, Your Honor. Thank you. ...ask the proponent of the fundamental issues that you're raising? Thank you for that suggestion. And please, the Court, my name is Gary Doyle on behalf of KPX. I think the issue has been twisted a little bit here in that it's not the air bill that was issued by Trans Group is just evidence of what Trans Group was doing wrong. Trans Group was operating as an air freight forwarder or attempting to operate as an air freight forwarder instead of a surface freight forwarder. So you agree this case really doesn't have anything to do with the parts. It has everything to do with the way Trans Group does business. I completely agree. Okay. And you want us to declare that there is a right of action under the Motor Carriers Act to go after Trans Group for their non-conforming bill of lading. And if there is jurisdiction, if there is such a cause of action and a federal court has jurisdiction of it, how do we measure the damages that your client has suffered because they tried to pass off an invalid bill of lading? It's not a question of whether it's an invalid bill of lading. The question is what was Trans Group trying to operate as and how were they enforcing the terms and conditions of that document? Keep in mind that... How are you damaged by it is what I'm trying to figure out. We know you... What's the end game? Because if Trans Group and just as opposing counsel just said, they do this, they issue this document tens of thousands of times and they claim to be a surface freight forwarder. Well, a surface freight forwarder cannot force the claimant to file their claim within 90 days as Trans Group tries to do. They can't force them to file a case within one year, which Trans Group tries to do. All the terms and conditions on the back of that document are contrary to what the Motor Carrier Act requires a motor carrier to do. This is the sort of an issue I take it that prior to the ICC Termination Act, you would have filed whatever it's called, a petition, a grievance, with the Surface Transportation Board or the Interstate Commerce Commission and you would say, hey, they can't do business this way. Exactly. Okay. And so your argument, why don't you then take it to the Surface Transportation Board, which is the successor under the Department of Transportation, to raise this claim as opposed to seeking a private right of action for damages in federal court? Because Congress provided us this means and given that we were going to have to file the CARMAC action. For every single failure to comply with every provision of the Motor Carrier Act? Well, we only have a private attorney general action. I mean, what do we need the Surface Transportation Board for? Do I have to answer that question? Yeah, you do. A lot of people would ask that question, Your Honor. Obviously, the Surface Transportation Board has focused its work on the areas of transportation that continue to be relatively heavily regulated, being rail. I've spoken to some people at the Surface Transportation Board about other areas, pipeline, transportation. They say, we don't deal with that stuff anymore. All we do is rail. All we do is rail stuff anymore. Don't bother us with the motor carrier stuff. Don't bother us with anything. What is the dollar amount of your damage? The dollar amount of our damage is $7,946. How do you trace that to the defective documents? As I was saying, if Trans Group has been arguing that under their procedures, that their liability is limited to 50 cents a pound. And what we're saying is, no, you're following the procedures of an exempt air freight forwarder. You can't do that. If the document said they had to make you whole. Excuse me? If they had to make you whole, 100% coverage, I don't see how your loss is in any way attributable to the documents. They're not saying you lost $7,000. We only owe you $1,000 because of the bill of lading. No, actually, they did. That's exactly what they said. In fact, they said they only owed us $610. That's the problem. Well, I understand your claim to be that there was a technical error in the bill of lading, but that the total loss has to do with the loss of the property. They're not claiming that they owe you less. They say that they don't owe you anything. No, they're saying they owe us $610. Where was that? They've argued consistently that the 50 cents liability is what is in effect, not the $25 per pound liability. But is the claim deficiency, whether we call it technical or not? Yeah, actually, the claim deficiency would be the $7,900. No, but the claim deficiency in the bill of lading, what is it? What's the problem in the bill of lading? Oh, with the air bill? Yeah. Well, like I said, the time limits that they provide for filing claims, for filing overcharge claims, for filing of lawsuits, they refer to a tariff consistently within their air bill of lading. They have no tariff, which is required under the Motor Carrier Act and the consistent rulings of the Supreme Court and this Court, that in order for a motor carrier to limit its liability, it needs to file a tariff, provide an opportunity to choose between levels of rates, and provide a full rate of liability. I guess I didn't ask my question. Can I just finish this? I didn't ask my question right, but if your loss is $7,000, let's tear up their bill of lading and say they owe you 100% of what your loss is, okay? Correct. You're still underneath the jurisdictional limit for federal court under the Carmack Amendment. Correct. So you can't prevail, right? There's no way you can win. Assuming the documents say we're not going to count their documents because they don't comply with the bill of lading rules, we buy your theory. Their 25-cent-a-pound thing is out. They owe you 100% of what your loss is, okay? 100% of your loss is $7,000. That's still beneath the jurisdictional limit for a federal Carmack claim, is it not? For a federal Carmack claim, correct. So aren't you out? No, because our other claim is based on a violation of the Motor Carrier Act. And what is your damage there? Well, and that's what we're saying. It ends up being the same damages because if they were able to operate, if they continue to operate as an air freight forwarder, operating under basically no rules of an air freight forwarder, and yet provide surface freight forwarder transportation services, they are in essence preventing people from collecting what they should be able to collect on a loss and damage claim. Okay, but I'll accept, though, because here's the difficulty, is that here's what the district court said. It said that, and this hasn't been appealed in, it said really that your complaint alleging a private cause of action pursuant to the 13704 did not include challenges to the terms that are raised for the first time in the motion for summary judgment. So then the district court goes on to say, so the only issue that it can consider is whether or not there's a private right of action. So let's say the district court is correct. There's a private right of action. But is the district court also correct that you didn't actually challenge the exact terms or that you conceded that the rodeo bill of lading would meet the terms, and therefore we really don't even have a case to talk about other than saying, well, yes, there is or is not a private right of action. The private, reiterate, the private right of action is based on trans groups' attempts to operate as an air freight forwarder in circumstances where they simply cannot do it. They have to. They have to. Okay. I'm still having trouble, because the question is, you really have to unpack the issues. The first question is, does that statute permit somebody to have a private right of action in the abstract? Okay. Got to answer that, yes or no. Let's say the answer is yes. Okay. Then you say, okay, what is my claim? Well, it's a claim for violation of the Motor Vehicle Act, correct? Motor Carrier Act. Motor Carrier Act. Excuse me, obviously. But then the district court says, but you didn't actually challenge the specific terms in these bills of lading as being a problem, and therefore it's not going to rule that they're a problem, therefore you don't really have anything to challenge. No, what the district court said, and we completely agree with, is the Air Bill was the evidence of their attempts to operate as an air freight forwarder. It was in what the violation of the Motor Carrier Act was operating as an air freight forwarder, or operating under the guise of an air freight forwarder, but being registered and trying to operate as a surface carrier, if you see what I'm saying. But isn't that what the district court was referring to? I would describe that as terms of operation under the Motor Carrier Act. And the district court is saying, you didn't raise those claims timely enough on summary judgment to permit the court to rule on them. So are they even properly before us? The violations were not necessarily the specific aspects of the Air Bill. The violation was, like I say, was operating as a, providing services as an air freight forwarder in an unregulated arena, but providing people, the service you're actually providing to people should be as a surface freight forwarder, which is a regulated arena, has certain, still certain requirements that are provided for, especially in the area of limitations of liability. But let's assume that will allow you to take us this far on your motor carrier route. And I still don't understand how we measure the damages for the violation. I mean, what we've really got here is a claim for lost freight of only $8,000. And in no way does $8,000 get you to $10,000. So you're out on the jurisdictional amount. What is the measure of damages if we accept your theory that there is a private right of action, that Trans Group was operating in violation of the act? What do you get? You get a dollar for bringing it to our attention plus attorney's fees? Well, I can't presume to say what the ICC would have done in this arena. But I think probably what they would have said is pay them their full amount of damages that they've claimed. And then they would have tacked on any fines on top of it. So what are the damages? The only damages that I can see here are 26 cartons of scooter parts worth $8,000 that didn't get to Sugar Land, Texas. Correct. And like I said, if Trans Group continues to operate with other people under the same process as they did with KPX, then in this case, if they were allowed to In the good old days, wouldn't the commission have simply issued a cease and desist order until Trans Group changed its method of operation in order to comply with the provisions of federal trucking law? And presumably they would have said, and by the way, you're liable for the full amount of the damages claimed by KPX. Well, but you still haven't told us what those damages are. The damages are that this company is operating in violation of the act. But the real problem that KPX is complaining about, as I understand it, is 26 cartons of scooters didn't make it. And we lost $8,000. No, actually, I guess that's one of the problems. No, one of the things we are really complaining about is the fact that Trans Group was operating as an air freight forwarder. I mean, that is really the crux of this case. But how are you to your damage in the amount of $7,000? I'm sorry. To your damage in the amount of $7,000. Correct. Okay. I think you're way over your time. Sorry about that. I don't wish to belabor the point at all. That's great. Thanks for coming. I will just want to close by saying that the Court has correctly recognized that Trans Group's business practices really weren't at issue in the court. What was at issue was the loss of the scooters. That was what was at issue to begin with. That was dismissed. And KPX has never been able to establish a link between the supposed acts of masquerading as an air freight forwarder and the loss of the scooters. And I think Your Honors have recognized that. Counsel, I don't know if you have been practicing long enough to know the answer to this question, but in the good old days when the Interstate Commerce Commission was in charge, how would this kind of a claim have been handled? Actually have been practicing that long ago. And in those days, the complainant, a complaining party, would bring a proceeding. Right. And the Commission would rule upon it. And what would the Commission, what kind of relief would the Commission afford, assuming that there's a viable complaint here, that your client is not dotting its I's and crossing its T's? What would the Commission do? Well, they could certainly revoke a license. They could issue a cease and desist order. They could issue penalties. What they wouldn't do is find that you owe money for the lost cargo. That was my question. So the mere fact that the complainant brought this matter before the Board would not have resulted in a monetary award to the complainant. As far as I know. I've never heard of that before. Well, but what would happen, though, remembering back to the ICC proceedings, is if I understand correctly, what they're saying is, look, it's not like we're necessarily challenging the details of your bill of lading, but you're just acting as one thing when you are another. And if you enforce the terms, then they only get 50 cents on the dollar or something less. And they want 100 percent on the dollar. So, therefore, you ought not be able to enforce. The binding document ought not be your bill of lading, because it's not the appropriate bill of lading. They want 100 cents on the dollar. That's, I think, their argument. Okay. So the question is, then, is there any standing in a private right of action for damages to challenge what would normally have been in the ICC proceeding, somebody, quote, masquerading or acting as one category when they really fell in another category? There's no case that has held that that type of standing exists. The cases that deal with the standing issue have to do with owner-operators who are complaining against carriers when there were provisions in their lease agreements or in their contracts that violated the law. Well, they could have sued you. In fact, they did bring the lawsuit originally in state court. Yes. And because it's under $10,000, the validity of the claim could have been litigated there, right? That's correct. And if they say your contract is not valid, that you're liable for 100 cents on the dollar, the state court judge could have so ruled. That's correct. That could have happened. But in this case, I want to also make clear that there was really no evidence before the court that our client was masquerading or conducting in any business other than what it was licensed as. There was no evidence that this shipper thought their goods would be transported by air, but instead they were transported by truck. There was no evidence that they were fooled into doing anything because they thought perhaps our client was acting as an air freight forwarder. In fact, the district court recognized that KPX had never seen the bill of lading that was issued by our client. Therefore, there's no basis for them to have ever said you were misled, you were misguided, you suffered damage. It's shipper beware. They know what you are and you know what they are. And beyond this $8,000, you can go about your business, right? Well, that's true. And I would add that the very bill of lading that was the subject of dispute in this case was actually found to be valid by the Southern District of New York. The limitation was upheld. So to say the trans group was somehow perpetrating a fraud or misrepresenting itself has no basis. Its document that it offered in this case had been held to be valid in another court. If the KPX were not to prevail on its federal claim here, is there still a possibility for a state court action? It's a possibility, certainly. But we would be looking into time bar issues. Not statute of limitations. Other issues have now begun to crop in. Yes, we would look into that issue. And certainly we could again raise the issue of limitation of liability. All right. Thank you so much. Thank you. Thank you. He's just argued and submitted. Last case is 06-15970 and 15006, Fillman Services versus United Parcel Service. Each side is going to have ten minutes. Good morning, Your Honor.
judges: Silverman, McKeown, Tallman